IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 98-CR-87-TCK-2 |
| | ) |
| EBRATOLLAH SAKHAEIFAR, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Before the Court is Defendant Ebratollah Sakhaeifar's ("Defendant") Motion to Vacate, Set Aside, or Correct a Sentence Pursuant to a Writ of Audita Querela under the All Writs Act, 28 U.S.C. § 1651. Doc. 40. The United States of America ("United States") opposes the motion. Doc. 43.

**I. Background**

Defendant is a native of Iran who entered the United States legally on or about April 23, 1993. On June 9, 1998, Defendant was charged in this case with violation Title 18 U.S.C. §1029(a)(2)—fraud; 18 U.S.C. §2(a)—conspiracy, and Title 18 U.S.C. §371—conspiracy to use a counterfeit access device. Doc. 1. Defendant hired attorney Stuart W. Southerland to represent him in the case. Pursuant to a plea agreement, Defendant entered a guilty plea as to the conspiracy count on September 10, 1998. Doc. 38. Subsequently, he was sentenced to five years of probation and—along with his two codefendants—ordered to pay $27,419.73 in restitution. Doc. 31 at 3.[1]

---

[1] On August 17 1999, the Court entered an order lowering the restitution amount to $13,709.87 to reflect that "several computers seized as a result of the instant offense have been returned to Bank of America in Phoenix, Arizona." Doc. 32. Defendant contends the reduced restitution was to be paid between the three codefendants, making his portion $4,569.96. Doc. 40 at 5. However, that requirement was not reflected in the amended order. Doc. 32. Further, the minutes of the sentencing held on January 12, 1999, reflect that the "restitution was to be paid jointly and

At the sentencing hearing, the Court instructed Defendant to inform the United States Citizenship and Immigration Services ("USCIS") of his conviction when he returned to Los Angeles and to inquire whether his conviction would affect his status in the United States, because Defendant had valuable appellate rights that would expire. Doc. 40, Ex. A, Decl. of Ebratollah Sakhaeifar, ¶8).

In his Declaration, Defendant contends that, upon his return to California, he went to the USCIS office in Los Angeles twice, spoke with at least two different immigration officers, and gave them his paperwork from this case. *Id.*, ¶9-10. According to Defendant's Declaration, both immigration officers told him there was no immigration case against him and that the criminal conviction would not affect his status as a legal permanent resident. *Id.*, ¶¶11-12.

Defendant's Declaration also states that he followed all terms of his probation and paid all fees he had been ordered to pay. *Id.*, ¶13. He states, "I thought I did everything I was supposed to do in order to make sure that I would not lose my legal status here in the United States, and "I never received any notices from the U.S. Citizenship and Immigration Services or from the Immigration Court informing me that I was in danger of losing my legal permanent resident status for this conviction." *Id.*, ¶14. On June 5, 2009, upon his return from a trip, he showed an airport employee his passport and green card and was able to leave the airport without incident. *Id.*, ¶15.

However, in November of 2010, he received a Notice to Appear to Immigration Court, and has been in immigration proceedings since then. *Id.,* ¶16. He is now in deportation proceedings and fears deportation to his native country of Iran. *Id.*, ¶18. Through his attorney, he has applied for asylum due to fear of returning to Iran. *Id.*, ¶19.

---

severally by all defendants." The loss was attributed to the jointly undertaken criminal activity and all defendants were held accountable for the full amount under the relevant conduct provisions. This would have been the most efficient manner to ensure the victim was made whole.

In his Motion, the Defendant argues that his conviction should be vacated or amended based upon affirmative misconduct of the government and ineffective assistance of counsel. Doc. 40. He also contends that the timeliness of his motion is subject to equitable tolling. *Id.*

The United States opposes Defendant's motion. Doc. 43.

## II. Applicable Law

"Common law writs, such as writs of coram nobis and audita querela, are extraordinary remedies that are appropriate only in compelling circumstances." *Thornbrugh v. United States*, 424 Fed. Appx. 756, 769 (10th Cir. 2011). "[A] writ of coram nobis is used attack a judgment that was infirm [at the time it issued], for reasons that later came to light," while "a writ of audita querela is used to challenge a judgment that was correct at the time rendered but which is rendered infirm by matters which arise after its rendition." *U.S. v. Torres*, 282 F.3d 1241, n. 6. (10th Cir. 2002).

## III. Analysis

### A. Equitable Tolling

Defendant acknowledges that because he has fully completed his federal sentence, he has no remedy under 28 U.S.C. §2255. Doc. 40 at 9 (*see Maleng v. Cook*, 490 U.S. 488, 490 (1989) (holding that an inmate who has fully completed his federal sentences cannot challenge his conviction under the federal habeas statute)). Nevertheless, he argues that his motion should be subject to equitable tolling of the one-year time limit for seeking relief under §2255 based on misconduct by government agents and ineffective assistance of counsel. *Id.* at 24-25.

Equitable tolling "is available only when an inmate diligently pursues his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances beyond [his] control." *Marsh v. Soares*, 223 f.3d 1217, 1220 (10th Cir. 2000). Furthermore, "it is well

established that ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing." *Id.* (internal quotations omitted).

Defendant received a five-year term of probation in 1999. Accordingly, his federal case ended in 2004. But despite having known the basis for his ineffective assistance of counsel claims since at least November 2010, when he received notice of the removal proceedings, Defendant failed to file a direct appeal or timely request collateral relief from his conviction. Accordingly, the Court concludes that Defendant's circumstances do not warrant equitable tolling.

### B. Affirmative Misconduct by the Government

Defendant argues the INS should be estopped from denying his application for permanent alien status because USCIS agents in California mistakenly told him that his criminal conviction in Oklahoma did not affect his legal status in the United States, and the INS took more than ten years to initiate deportation proceedings against him.

The Supreme Court has acknowledged the possibility that "'affirmative misconduct' on the part of the Government might estop it from denying citizenship." *INS v. Hibi*, 414 U.S. 5, 8 (1973). However, it is well settled that erroneous advice by government representatives does not amount to affirmative government misconduct. *Id.* (government's failure to advise an alien of his rights or provide an immigration agent in petitioner's home to render advise to petitioner was not misconduct). *See also Schweiker v. Hansen*, 450 U.S. 785 (1981) (erroneous advice from social security representative not affirmative misconduct) *INS v. Hibi*, 414 U.S. 5 (1973)

Here, Defendant has made no showing of "affirmative misconduct".

### C. Equitable Tolling of Statute of Limitations

Defendant acknowledges that because he has completed his federal sentence and is not currently in custody or under court supervision, he has no remedy under 28 U.S.C. §2255. Doc.

4

40 at 7; *Maleng v. Cook*, 490 U.S.488, 490 (1989) (inmate who has fully completed his federal sentence cannot challenge his conviction under the federal habeas statute); *Rawlins v. Kansas*, 714 F.3d 1189, 1195 (10th Cir. 2013) ("[W]here a federal convict cannot bring a §2255 petition because he. . . is no longer in federal custody . . . a Writ of Audita Querela under the All Writs Act, 28 U.S.C. §1651, is the only relief available to him." *Rawlins v. Kansas*, 714 F.3d 1189. Nevertheless, Defendant argues that his motion is subject to equitable tolling to avoid the one-year statute of limitations for §2255 motions.

"AEDPA's one-year statute of limitations is subject to equitable tolling but only in rare and exceptional circumstances." *Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000). The Tenth Circuit has held that equitable tolling is appropriate when a prisoner is actually innocent, when an adversary's conduct or other uncontrollable circumstances prevents a prisoner from timely filing, or when a prisoner actively pursues judicial remedies but files a defective pleading during the statutory period. *Id.* (citing *Irwin v. Dep't of Veterans* Affairs, 498 U.S. 89, 96 (199). However, "[s]imple excusable neglect is not sufficient." *Id.* Equitable tolling is only available "when an inmate diligently pursues his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control." *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000). Moreover, "ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing." *Id.* (internal citations omitted).

As previously stated, Defendant received a five-year term of probation in 1999 and his federal case ended in 2004. Although he received notice of the removal proceedings in November 2010, he did not file the pending motion until 2019. Doc. 40-1 at 4. Even if the Court were to conclude Defendant's claim was properly raised under § 2255, the circumstances do not warrant equitable tolling.

### D. Writ of Audita Querela

The All Writs Act provides, in pertinent part, that the federal court may "issue such commands. . . as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *United States v. New York Tel. Co.*, 434 U.S. 159, 172 (1977). However, "[c]ommon law writs, such as the writs of coram nobis and audita querela, are extraordinary remedies that are appropriate only in compelling circumstances." *Thornbrugh v. United* States, 424 Fed. Appx. 756, 759 (10th Cir. 2011) (unpublished).

Nonetheless, the Tenth Circuit has acknowledged that although the writ of audita querela has been abolished in civil cases, "a petition for a writ of audita querela might afford post-conviction relief to a criminal defendant to challenge a conviction or sentence to the extent it fills gaps in the current system of post-conviction relief." *United States v. Harris*, 391 Fed. Appx. 740, 743 (10th Cir. 2010) (citing *United States v. Torres*, 282 F.3d 1241, 1245 n. 6 (10th Cir. 2002)). However, the writ of audita querela is reserved for unanticipated circumstances arising after entry of judgment that render continued enforcement of the judgment "contrary to justice." *Rawlins v. Kansas*, 714 F.3d 1189, 1193 (10th Cir. 2013). In other words, where—as in this case—the restitution order was not infirm at the time of sentencing, and the defendant is attempting to reform it only to avoid adverse immigration consequences, "it usurps Congress's plenary power to set the terms and conditions of American citizenship and the executive's discretion to administer the immigration laws." *Munroe v. Ashcroft*, 353 F.3d 225, 227-28 (3dd 225, 227-28 (3d Cir. 2003).

Moreover, even assuming the writ is available in this context, "[t]he defense of laches is bottomed on the principle that equity aids the vigilant, not those who sleep on their rights." *United States v. Ballard*, 334 Fed Appx. 141, 143 (10th Cir. 2009) (*citing Park County Res. Council, Inc.*

*v. U.S. Dep't of Agriculture*, 817 F.2d 609, 618 (10th Cir. 1987). Defendant Sakhaeifar knew of the basis for his ineffective assistance claims since at least 2010, when he received the notice of removal proceeding but failed to file a direct appeal or a timely request for collateral relief from his conviction.

Finally, "[a]udita querela is only available where the judgment of the district court was correct at the time it was rendered, but is undermined by facts that later come to light." *United States v. Miller*, 599 F.3d 484, 489 (5th Cir. 2010). "*Padilla* does not apply retroactively to individuals whose convictions, like Fraire's, became final before the Supreme Court decided *Padilla*." *United States v. Fraire*, 512 Fed. Appx. 745, 746 (10th Cir. 2013). Accordingly, Defendant cannot obtain audita querela relief from his pre-*Padilla* conviction.

### E. Estoppel

The Supreme Court has held that estoppel might apply against the government upon a showing that its agents engaged in "affirmative misconduct." *See, i.e., Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 385 (1947) (acknowledging that the requirements for private estoppel were satisfied where two farmers relied on a government agent's mistaken promise that their entire wheat crop would be federally insured by the Federal Crop Insurance Corporation ("FCIC"), but holding that the farmers were presumed to know the content of the FCIC regulations regardless of the "hardship resulting from innocent ignorance"); *Montana v. Kennedy*, 366 U.S. 308 (1961) (acknowledging that there might be circumstances under which an estoppel argument could succeed against the government, but declining to estop the government from denying the plaintiff citizenship because the official's well-intentioned but mistaken advice fell "far short of misconduct such that might prevent the United States from relying on petitioner's foreign birth" );

7

*Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 53 (1984) (where the defendant—acting on mistaken advice from a government agent—applied for and received double reimbursement for specific operating expenses because of the overlap between the two programs, the court rejected defendant's argument that the government should be estopped from seeking reimbursement because "citizens are presumed to know the law and may not rely on government agents' incorrect interpretations of the law."

In support of his position, Defendant cites *Sun Il Yoo v. Immigration and Naturalization Service*, 534 F.2d 1325 (9th Cir. 1976). In *Yoo*, the plaintiff applied for "classification as a Sixth-preference immigrant based on his occupation as a machinist" employed at Seoul Electric and Motors Manufacturing Company ("Seoul Electric"). *Id.* at 1326. When the INS investigated Yoo's application, it was erroneously told that Yoo was never employed at Seoul Electric. *Id.* at 1327. Subsequently, he was denied a visa "on the ground that he had given false information regarding his prior employment." *Id.*

Yoo appealed the decision and provided a corrected statement of his employer. *Id.* The INS agreed to reconsider his application if he would dismiss his appeal. *Id.* However, Yoo's subsequent visa application in September 1971 was also denied because he could not obtain labor certification in the fall of 1971 without showing the existence of a job offer, which he was unable to do because his employer no longer existed. *Id.* Yoo then filed an application for adjustment of his status to that of a permanent resident, but the Immigration Law Judge denied the application, finding Yoo was not eligible for an immigrant visa since he was unable to comply with the labor certification requirements of 8 U.S.C. § 1182(a)(14). Yoo's appeal to the Board of Immigration Appeals was dismissed in March 1974 on the grounds that he had never received labor certification

from the Secretary of Labor, nor had he been the beneficiary of an approved sixth-preference visa petition. *Id.*

Yoo then appealed to the Ninth Circuit Court of Appeals, arguing that he was eligible for relief under 8 U.S.C. § 1255 because he had a right to labor certification when his employer applied for visa preference on his behalf in October 1969, and he was prevented from obtaining certification only because of the INS's unjustified delay in recognizing that he had provided correct information in his application. *Id.* at 1328. The Ninth Circuit agreed, and concluded that the INS's one-year delay in reconsideration of Yoo's application and characterized the INS's conduct as "oppressive." *Id.* at 1328.

Defendant's position in this case, however, is not analogous to the situation in *Yoo*. Even if Defendant establishes that government agents gave him erroneous advice in 1999, he cannot prove he took or failed to take any actions based on that advice, because by that time, he had pled guilty to the fraud charge, judgment had been entered on January 15, 1999, and his time to appeal expired ten days later, on January 25, 1999. Doc. 31. And although Defendant cannot remember the exact dates in 1999 on which he went to the immigration building in Los Angeles, his probation was not transferred to California until at least February 23, 1999. Doc. 33. Accordingly, the Court declines to grant Defendant's Petition for a Writ of Audita Querela.

Furthermore, if this Court were to alter the restitution order for the purpose of preventing even draconian immigration consequences, the change "must be ignored by the immigration judge and the Board of Immigration Appeals in determining whether the loss to the victim exceeded $10,000." *Lee v. United States*, 2007 WL 1987868 at *8 (S.D.N.Y. July 9, 2007 (unpublished) (citing *Munroe*).

9

Nor can Defendant invoke the writ of audita querela to reapportion his restitution order. "Audita querela is only available where the judgment of the district court was correct at the time it was rendered, but is undermined by facts that later come to light." *United States v. Miller*, 599 F3d. 484, 489 (10th Cir. 2010). No such showing has been made in this case.

Finally, "there is authority for the proposition that '[w]hen a court vacates an otherwise final and valid conviction on equitable grounds merely to avoid the immigration-law consequences of the conviction, it usurps Congress's plenary power to set the terms and conditions of American citizenship and the executive's discretion to administer the immigration laws.'" *Munroe v. Ashcroft*, 353 F.3d 225, 227-28 (3d Cir. 2003) (citing *Renteria-Gonzalez v. INS*, 322 F.3d 804, 812 (5th Cir. 2003).

Regardless of whether the Defendant seeks to alter his fully-paid restitution order because it was infirm at the time of imposition, or to avoid immigration consequences he did not anticipate at the time it was entered, relief through a writ of audita querela is not available to him.

**IV. Conclusion**

Defendant's Motion to Vacate, Set Aside, or Correct Sentence (Doc. 40) is hereby denied.

**ENTERED this 7th day of March, 2022.**

*[Signature]*
TERENCE C. KERN
United States District Judge